UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DOMINGO TAMEZ, JR., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. M-07-237 |
| | § | |
| MICHAEL CHERTOFF, *et al*, | § | |
| | § | |
| Defendants. | § | |

**<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Now before the Court is Defendant's Motion for Summary Judgment. (Doc. 18). For the reasons articulated below, this Motion is **GRANTED**.

**I.     Background and Parties' Arguments**

Plaintiff Domingo Tavez, Jr. ("Tavez" or "Plaintiff") sued Michael Chertoff, Secretary of the Department of Homeland Security ("Defendant"), in this Court for violations of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act. (Doc. 1 at 1-2). He alleges that he was a victim of age and race discrimination and retaliation by his employer, Customs and Border Protection ("CBP" or "the Agency"), when he was not selected to be a Field Canine Enforcement Trainer. *Id*. at 3. He supports these arguments by pointing out that all three men initially selected for the job openings were Caucasian and by saying that one of the selectees was under 40 and less qualified than Tamez. *Id*. at 4. Tamez also preemptively argues that the Agency's defense—that he was not selected because his résumé was weaker than the others' résumés—is pretext. *Id*. at 3.

Defendant filed the instant Motion, arguing that it is entitled to summary judgment because the CBP agents it selected for the Field Canine Enforcement Trainer

positions demonstrated better capabilities, were better qualified, and received higher marks on reference checks. (Doc. 18 at 2). It says there is no evidence that any decisions were motivated by race or age discrimination. It also alleges that the retaliation claim is barred because there was no administrative presentation of it at the EEOC hearing, and because the adverse action was taken *before* his EEOC complaint so there is nothing for which Plaintiff could have been retaliated against. *Id.* Defendant explains that the Best Qualified List ("BQL") on which Tamez and the selected officers appeared was not in rank order, so the Agency was within its rights selecting anyone from that list. *Id.* at 7. Additionally, it argues that statistically it is obvious that the Agency and specifically the final decision-maker on the job postings in question, David Higgerson, do not discriminate based on age or race because five of the 11 people Higgerson selected for these positions at various Texas/Mexico border locations were Hispanic and nine of the 11 were over 40. *Id.* Furthermore, Defendant argues that discrimination is impossible here because two of the selectees were older than the Plaintiff and the third isn't "substantially younger," and because many of the decision-makers were themselves Hispanic. *Id.* at 17. Finally, Defendant points out that one of the agents selected, Gene Hanvy, was already a "GS-12," meaning that if he took the position it would be a lateral move rather than a promotion, so experience rather than race was the only factor in his selection. *Id.* Defendant goes on to explain the burden-shifting analysis which applies in cases of this sort, which the Court outlines below. *Id.* at 9 *et seq.*

In the Plaintiff's response to the Motion for Summary Judgment, he repeats that the Defendant's main reasons for non-selection—better articulated experience in the résumé and better qualification—are pretextual. (Doc. 21 at 2). He says that he

establishes a *prima facie* case and that the law requires that a trier of fact determine if the Agency's justifications for their actions are true. *Id*. at 4-7. Specifically, he argues that the "mysteriously incomplete" résumé is not an accident and that the truncation of his résumé denied him an opportunity to compete. *Id*. at 9. He also says that the testimony in the record reveals inconsistencies in the hiring process which suggest discrimination. *Id*. at 13-21.

Defendant replies that there is no evidence of tampering with the résumé and any allegation that someone shortened it on purpose is mere speculation. (Doc. 22 at 2, 7). It also says that the decision-makers' testimony revealed no inconsistencies. *Id*. at 3.

## II.     Authority

### a. Summary Judgment Standard

A district court will grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A party moving for summary judgment has "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621

(5th Cir. 2000). At the summary judgment stage, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Anderson,* 477 U.S. at 249; *Dean v. City of Shreveport,* 438 F.3d 448, 454 (5th Cir. 2006). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves,* 530 U.S. at 151. Factual controversies are resolved in favor of the non-movant only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy; in the absence of any proof, the Court does not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### b. Burden-Shifting Framework

In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the plaintiff produces only circumstantial evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973) guides the inquiry. The Fifth Circuit applies the *McDonnell Douglas* framework to both Title VII and ADEA claims. *See Russell v. McKinney Hospital*, 235 F.3d at 222 n.3.

The complainant in a Title VII or ADEA trial carries the initial burden of establishing a *prima facie* case of race or age discrimination. This may be done by showing (1) that he belongs to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that he was rejected despite his

qualifications; and (4) that, after his rejection, someone outside the protected class was selected or the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas*, 411 U.S. at 802; *see also Bienkowski v. Am. Airlines, Inc.,* 851 F.2d 1503, 1504-1505 (5th Cir. 1988). A plaintiff's personal beliefs that his employer discriminated or retaliated against him, however genuinely held, are insufficient to establish a *prima facie* case of discrimination or retaliation, or to raise a genuine issue of material fact precluding summary judgment. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000); *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246-47 (5th Cir. 1985); *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997).

Once the plaintiff has satisfied his *prima facie* burden, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981). Defendant bears the burden of production, not persuasion, as to the nondiscriminatory reason for its action. *Sandstad v. CB Richard Ellis*, Inc., 309 F.3d 893, 897 (5th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 255-56). If the defendant satisfies this burden, the presumption of race or age discrimination established by the *prima facie* case dissolves. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993).

Then the plaintiff is required to show either (1) the reasons were not true and were mere pretext for discrimination, or (2) even if the reasons were true, discrimination was a motivating factor. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). "Thus, the plaintiff can survive summary judgment by producing evidence that creates a

jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad*, 309 F.3d at 897.  However a mere allegation of pretext is not necessarily sufficient.  It is "possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003) (quoting *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903 (5th Cir. 2000)).

### III.   Analysis of the Age and Race Discrimination Claims

#### a.  *Prima Facie* Case

The Plaintiff successfully establishes many of the elements of a *prima facie* case laid out by *McDonnell Douglas*.  First, it is clear that he belongs to a protected class both under the ADEA and Title VII.  Parties do not dispute that Tamez is Hispanic and over 40 years of age.  Second, Plaintiff proved that he applied for and that he was qualified for the Field Canine Enforcement Trainer position.  (Doc. 18 at Ex. F11j).  Third, he showed that he was not selected for the position.  Parties do not dispute his rejection.

However, Plaintiff's success in establishing the fourth element of the *McDonnell Douglas* framework—that someone outside the protected classes was offered the job or that the job remained open—is doubtful.  All three men originally offered the jobs (Gene Hanvy, Robert Denniston, and Randall Gerlach) were Caucasian.  *Id*. at Ex. EEO Investigation Report p. 3.  Plaintiff also points out that after two of these three men declined the offers, the announcement was closed rather than offered to qualified Hispanics.  *Id*.  Accordingly, it appears that Plaintiff has established this fourth element in regards to the racial discrimination claim.  But when the other opening in Brownsville

was re-listed and finally filled, the man selected for the job, Richard DeMille, was Hispanic.[1]  *Id*. at Ex. F9 p. 3.  This casts serious doubt on the Plaintiff's ability to establish this last element in regards to his racial discrimination claim.  However, Plaintiff filed this suit based on his initial non-selection in favor of three Caucasian men rather than his non-selection later when the positions were re-listed.  Accordingly, the Court finds that Plaintiff has met his initial burden in establishing a *prima facie* case of race discrimination pursuant to Title VII.

However, the Plaintiff is not successful in establishing this final element in regards to his age discrimination claim.  Both Hanvy and Denniston are over 40, and they are older than the Plaintiff as well.[2]  Only one of the men initially offered the job, Gerlach, is under 40 and younger than Tamez.[3]  While Gerlach is under 40 and thus outside the protected class, "the ADEA prohibits discrimination on the basis of age and not class membership."  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (U.S. 1996).  Therefore, a *prima facie* case of age discrimination requires a plaintiff to show his replacement is "substantially younger" rather than simply "under 40."  *Id*.  Plaintiff does not establish Gerlach's exact age nor even allege that he is substantially younger than Tamez.  Plaintiff's failure to prove Gerlach's "substantially younger" age coupled with the fact that two of the men selected for the position were actually older

---

[1] The man who eventually filled the post in Progreso, Mike Brown, may have been Hispanic as well.  *Id*. at Ex. G1 pp. 153-154.  However Plaintiff suggests that he is not Hispanic but rather a Canadian Caucasian.  *Id*. at p. 240; p. 267.  At the summary judgment stage, the Court views contradictory evidence in favor of the Plaintiff, so it is assumed here that Brown is Caucasian.  Plaintiff also claims that DeMille is not Hispanic but rather Puerto Rican.  *Id*. at 267.  The Court does not wish to entertain a debate about the definition of "Hispanic," and instead takes judicial notice that the term Hispanic typically refers to people from or with descendants from any Latin American or even any Spanish-speaking country, which would include Puerto Rico.  *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 548 (Frederick C. Mish et al. eds., 10th ed. 2001).

[2] Denniston's date of birth is 10/06/1957. (Doc. 18 at 17).  Hanvy's date of birth is 12/1/1951.  *Id*.  Tamez's date of birth is 12/14/1961.  *Id*. at Ex. G1 p. 8.

[3] Gerlach's date of birth is not evident in the record, but parties seem to concede that Gerlach is younger than Tamez, and at least one person has given testimony that he is in his mid thirties.  *Id*. at Ex. G1 p. 109.

than Plaintiff—one of them by a decade—signify that Plaintiff cannot establish a *prima facie* case of age discrimination. Even making all reasonable inferences in the Plaintiff's favor, these facts could not give rise to age discrimination. Had Defendants been discriminating on the bases of age, the Plaintiff would have been offered the job before Denniston or Hanvy. Consequently, Plaintiff's ADEA claim fails at this stage in the analysis.

### b. Legitimate, Nondiscriminatory Reason

Because the Plaintiff successfully established a *prima facie* case as to the Title VII claim, it is now the Defendant's burden to provide a legitimate, non-discriminatory reason for its actions. Margie Gutierrez, who was the Port Director for Brownsville and recommended Gerlach, Denniston, and Hanvy for the two openings at that location, states that the selectees' résumés articulated their experience very well while the Plaintiff's résumé was very brief and did not state all his qualifications. (Doc. 18 at Ex. F4 pp. 5-6). She also says that the selectees had very high ratings in references from their superiors while Tamez's were not as good. *Id*. at p. 7. Severiano Solis, who was the Acting Port Director in Progreso and recommended Hanvy for the position at that location, says he recommended Hanvy because he was the only person on the non-competitive list; Solis says he was not even required to consider other candidates given Hanvy's non-competitive status. *Id*. at Ex. F7 p. 3. Higgerson, who was Acting Director of Field Operations at Laredo and made the final decision, says he relied on the recommendations made by Gutierrez and Solis. *Id*. at Ex. F3 pp. 4-5. These declarations are supported by the demonstrable distinctions between the references and résumés of the Plaintiff and the three selectees. *Compare id*. Ex. 11a-11h. Therefore, the Court finds that Defendant met

its burden to produce a legitimate, non-discriminatory reason for the adverse employment action taken against Plaintiff.

### c. Pretext

Now the burden shifts back to the Plaintiff to produce evidence raising a fact issue as to whether the Defendant's given reason was pretextual. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 682 (5th Cir. 2001). "To establish pretext, a plaintiff cannot merely rely on his subjective belief that discrimination has occurred." *Price*, 119 F.3d at 337 (citing *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1166 (5th Cir. 1993)). "In order to withstand summary judgment, Title VII requires that [Plaintiff], using direct or circumstantial evidence, present sufficient evidence for a reasonable jury to conclude that race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003)) (internal quotations removed).

#### i. Plaintiff's Evidence of Pretext

Here, as is common in discrimination cases, Plaintiff has no direct evidence of discrimination. Instead he attempts to provide circumstantial evidence to show that Defendant's reasons for not selecting him were pretext. The Court finds that even viewed cumulatively, the evidence raised by the Plaintiff is so tenuous that it cannot support an inference of racial discrimination. *West*, 330 F.3d at 385. The Plaintiff's arguments regarding pretext rest solely on his subjective belief that discrimination occurred, and thus fail to meet his burden. *Price*, 119 F.3d at 337.

For example, one piece of circumstantial evidence that Plaintiff cites is that Caucasians provided the reference checks and gave perfect scores to other Caucasians

while Hispanics had more negative references.[4] (Doc. 18 at Ex. G1 pp. 16 and 201). While Plaintiff is Hispanic and received less than perfect scores and the other three men are Caucasians and received perfect scores, there is no evidence to show that this distinction was motivated by discriminatory animus rather than by the applicants' differing qualifications. (Even the Plaintiff agrees that Hanvy, one of the Caucasians, deserves his outstanding marks.[5] *Id.* at p. 130.) While it certainly would be *very* strong circumstantial evidence if many or all Hispanics received low scores on their references from CBP superiors and all Caucasians received high scores, the only pieces of evidence in the record are the eight references for these four men. Without looking at references for at least one other Hispanic, there is no evidence of any pattern of racial discrimination. Nothing in these eight references suggests discriminatory animus. Plaintiff's mere belief that he deserved higher marks in insufficient.

As another piece of circumstantial evidence, Plaintiff points out that one of the men asked to give him a reference, Moriarty, had not even supervised him for a year. *Id.* at p. 113. He suggests that the CBP's use of Moriarty as his reference instead of the reference listed on his résumé, Gene Hanvy, indicates that Tamez was not given a fair opportunity. However, one of Defendant's agents explains that Hanvy was not used as a reference for the Plaintiff because they were competing for the same position. *Id.* at p. 136. Another agent points out that Moriarty was used as a reference for Tamez because he was Tamez's "first line" supervisor, and typically one of an employee's references is

---

[4] The Court notes that one of Tamez's references was provided by an Officer Contreras. (Doc. 18 at Ex. F11h p. 2). While it ranked him more positively than Moriarty's reference did, it did not rank him with the perfect scores that other candidates had in each of their references. This fact goes against Plaintiff's suggestion that he received poorer marks from Caucasian superiors because they possessed a racial bias.
[5] At p. 239, even Plaintiff seems to admit that Hanvy is the best qualified for the Field Canine Enforcement Trainer position.

provided by the "first line" supervisor. *Id*. at pp. 106 and 113. While the Court cannot make any credibility determinations in favor of the Defendant at this stage, the Plaintiff neither counters these explanations nor provides any alternative theory as to why the use of Moriarty rather than Hanvy as a reference was motivated by race instead of by the practical reasons the Defendant cited. Controversies are resolved in favor of the non-movant only when the parties create an actual controversy. *Little*, 37 F.3d at 1075. Because the Plaintiff did not actually contest CBP's explanation, this piece of circumstantial evidence does little to provide any inference of discrimination.

      Another argument Plaintiff makes is that he was simply better qualified than the Caucasian individuals who were selected. He supports this assertion with the affidavit of his one-time supervisor, Gene Hanvy, who says Plaintiff "should have gotten the job" and "why he was not selected totally baffles me." (Doc. 21 at 6). Plaintiff also says the Best Qualified List is ranked, so his appearance at number four on the BQL indicates that he was a stronger candidate than Gerlach, who was number eight on the list. (Doc. 18 at Ex. EEO Investigation Report p. 4). The Court finds it compelling that Hanvy, Plaintiff's former supervisor and a man so obviously well respected by everyone involved in this case, thinks so highly of the Plaintiff. However, Hanvy was not a decision-maker in this employment decision, so his opinion is not indicative of what the Defendant should have done. Additionally, even assuming in favor of the non-movant that the BQL is in ranked order and thus the people who made the list viewed Tamez as a superior candidate to Gerlach, there is no evidence in the record as to what the BQL rankings were based on, nor is there evidence suggesting that local decision-makers were bound to consider the same factors as the people who formed the BQL. With so little in the record to indicate

the importance of the BQL, it is a tenuous argument to suggest that departure from this list's rank order is even atypical. Moreover, there is no evidence to show that the departure from the BQL rankings was racially motivated. Had Tamez been first or second on the list and three people below him selected in his stead, the situation would be more indicative of a bias.

The argument that Tamez was better qualified than the others has little bearing on the pretext inquiry in this case. It is clear that all the candidates placed on the Best Qualified List, including the Plaintiff, were qualified to be Canine Field Enforcement Trainers. (Doc. 18 at Ex. G1 p. 238). Defendant admits that Plaintiff is qualified, but still justifies its decision by showing that Plaintiff's résumé did not reflect all his qualifications. *Id*. at Ex. F4 p. 6. Viewing contested issues in favor of the Plaintiff, the Court is willing to assume that Plaintiff was more qualified than Gerlach. But even with this assumption, Defendant's legitimate nondiscriminatory reason for its actions still stands: Tamez's résumé did not reflect his alleged superiority. Plaintiff seems to believe that the decision-makers should have blindly followed the BQL or somehow have considered Plaintiff's qualifications beyond those listed in his résumé. But the Court cannot place such a burden on employment decision-makers. They relied on the applications before them when they made their hiring decisions. The Court cannot infer racism from the mere fact that decision-makers did not take into account factors that were not presented to them at the time they made their decision.

Plaintiff also argues that the record reveals inconsistencies in the testimony of Agency officials, especially Higgerson. (Doc. 21 at 11). He finds it troubling that Higgerson initially refused to admit that he knew Tamez was Hispanic. *Id*. He also

points out that Higgerson did not look at Tamez's résumé and thus cannot argue that he is less qualified. *Id*. at 10. And he adds that Higgerson has been accused of discrimination by other employees so any statistical evidence which suggests the Agency's hiring procedures are not discriminatory is inaccurate and unpersuasive. *Id*. at 13.

      The Court is not persuaded by the Plaintiff's allegations of testimonial inconsistency. The Court was not swayed by the Agency's statistical evidence in the first place; statistics on selectees have little meaning without statistics on the applicant pool, and the Court considers only evidence favorable to the Plaintiff at this stage. Moreover, a single other pending discrimination case against a manager who supervises over 2300 employees does not greatly affect the man's credibility or indicate a pattern of discrimination. But even wholly disregarding Higgerson's testimony in favor of the agency, the Court does not find inconsistencies among the testimony of other witnesses. Instead, the Court notes that all the managers and employees who testified on behalf of CBP are remarkably consistent in their descriptions of the decision-making process and in their reasons for making the selections that they made. Repeatedly, all the officials involved cited outstanding reference scores and lengthy, detailed résumés as their reasons for preferring Hanvy, Gerlach and Denniston over the Plaintiff. (Doc. 18 at Ex. F4 p. 7; Ex. F5 p. 5; Ex. F6 p. 5). No inconsistent testimony suggests these reasons are false. Repeatedly, testimony shows that Solis and Gutierrez recommended Hanvy, Gerlach and Denniston to Higgerson and that Higgerson simply approved these recommendations. *Id*. at Ex. F4 p. 4; Ex. F7 p. 3-4. No inconsistent testimony suggests that Higgerson may have actually played a greater role in the decision. Therefore the Court finds the alleged

inconsistencies regarding Higgerson's and others' testimony raised by the Plaintiff to be insufficient to raise any inference of racial discrimination.

Additionally, the Plaintiff argues that the record reveals worrying procedural inconsistencies. Specific instances that Plaintiff mentions are that his personnel file could not be located when he asked for it, that the "rule of four" procedure[6] was not followed, and that Moriarty had differing answers in the two references he provided for the Plaintiff within a 24-hour period.

The Court does not see how the personnel file is related to this claim. Plaintiff is suing for not being selected for a position, and there is no indication that this particular file was unavailable during the selection process or even that it should have been consulted at all. Then the "rule of four" procedure which was ignored is something the Agency claims it has not used in years. *Id*. at Ex. G1 pp. 46 and 48. Plaintiff provides no evidence to show that the rule of four is typically used, so there is no indication that its non-use indicates irregular procedure.[7] And then Moriarty's differing references, which are troubling to the Court, are a poor argument in favor of the Plaintiff. The second reference Moriarty gave was harsher than the first. *Id*. at p. 168. Any suggestion that Moriarty was discriminating against the Plaintiff when he failed to call to correct the first reference is unfounded because making that phone call would have only hurt the Plaintiff. Additionally Moriarty was one of two recommenders, and as neither one gave Tamez perfect scores—in contrast with the perfect scores garnered on each of the references of the selectees—Plaintiff would have to suggest that *both* of his recommenders did

---

[6] This procedure would require decision-makers to initially select from the top 5 candidates on a BQL. It is found in the union contract. (Doc. 18 at Ex. G1 p. 48-49).

[7] Nonetheless the existence of the "rule of four" suggests that, at least at one time, BQLs were put in a ranked order. The Court views this in favor of the Plaintiff as evidence that BQLs are ranked.

something irregular to convincingly argue that procedural irregularities affected his application process. Even viewed cumulatively, these alleged procedural irregularities do not show improper process sufficient to suggest any discriminatory animus towards the Plaintiff.

Finally, Plaintiff relies heavily on his "mysteriously incomplete" résumé and asserts that the "probable explanation is that the resume was purposely deleted or tampered with."[8] (Doc. 21 at 9). He reasons that if he had submitted the résumé improperly and it had been incomplete originally, then he never would have made the BQL. Since he was put on the BQL by the Office of Personnel Management, he argues that the résumé was surely submitted in full and truncated at some point after it left the personnel office. (Doc. 18 at Ex. G1 p. 273). This reasoning makes sense, though Plaintiff has no evidence to support it.[9] But even assuming that Plaintiff's résumé was submitted in full and later truncated, Plaintiff has no evidence to show that it was intentionally shortened, much less that it was intentionally shortened by someone motivated by a racial bias. Like the Administrative Law Judge who decided the EEOC complaint, the Court acknowledges that the problems with the résumé "crippled" the Plaintiff as he pursued these job openings. *Id.* at Ex. I p. 9. But Plaintiff's allegation of intentional truncation motivated by racism is simply not supported by any evidence whatsoever. The Court is only required to make *reasonable* inferences in favor of the non-movant, and an inference of racial motivation here would surpass the bounds of reasonableness.

---

[8] Plaintiff "proves" that the complete version of his résumé was properly submitted for the job by using his own testimony in the EEOC hearing. (Doc. 21 at 21). He has no other evidence to support this assertion.
[9] The complete résumé which Plaintiff contends he correctly submitted online is not in the record. (Doc. 18 at Ex. G1 p. 269-70). The longer résumé in the record is one the Plaintiff worked on at some point after the original submission. *Id.*

The Plaintiff believes his claims should survive to trial because the cumulative impact of circumstantial evidence must be considered. *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 19-20 (7th Cir. 1988), *overruled on other grounds by* 860 F.2d 834 (7th Cir. 1988). Here, while the Court has *addressed* each piece of circumstantial evidence raised by the Plaintiff individually, it does not *consider* each piece individually; the Court views all the evidence collectively. Nonetheless, even after making assumptions in favor of the Plaintiff and viewing all his arguments and evidence together and considering their cumulative impact, there is no evidence of racial discrimination here. Plaintiff has not created a fact issue as to whether CBP's adverse employment decision was, even in part, motivated by discriminatory animus. *Roberson*, 373 F.3d at 652.

The Court finds support for its view that Plaintiff's evidence is lacking in the very cases the Plaintiff cites. For example, in the *Phelps* case, the court found the employee did not make a showing of age discrimination when she had no evidence of discriminatory animus. 986 F.2d at 1026. And while the plaintiff in *Graefenhain* did prevail, he had compelling circumstantial evidence that the employer's given reason for his termination was false. The employer fired Graefenhain because he was making "cutbacks" but then gave a younger man the same office, secretary and equipment. 827 F.2d at 22. Obviously, this suggested that no cutbacks were made. Thus the very circumstances of the plaintiff's termination suggested pretext. Here, however, Tamez has not been able to show circumstances which controvert the legitimate reason provided by the Agency. While Plaintiff attempts to show through circumstantial evidence that race was a motivating factor in the Agency's hiring decisions for the Field Canine

Enforcement Trainer positions, the evidence presented here is not sufficient for a reasonable jury to come to such a conclusion.

### ii. Plaintiff's Arguments Against the Granting of Summary Judgment

Plaintiff says the reasons upon which Customs and Border Protection grounded its decisions are largely subjective, and notes that subjective qualifications are most prone to be infected by stereotype or bias. (Doc. 21 at 5) (citing *Medina*, 238 F.3d at 682). Thus the Plaintiff argues that his claims must proceed to trial so that a factfinder can decide the true motivation behind the subjective decisions made by the employer. This Court agrees with the Fifth Circuit's decision in *Medina*, which notes that when hiring criteria are entirely subjective, claims cannot be defeated on summary judgment at the *prima facie* case stage. 238 F.3d at 682. However Medina, who claimed age discrimination, offered much more concrete evidence of discrimination than that which the Plaintiff has provided. He showed that near the time he was passed over in favor of a younger candidate, one vice president said the company should "get rid of all the old people." *Id*. He then showed that this same vice president was involved in hiring decisions. *Id*. He also countered the defendant's legitimate reason for passing him over (that he was not qualified) with evidence that he was more experienced in sales and in the industry than the man selected for the job. *Id*. Here, the Plaintiff has offered no hard evidence of discriminatory animus. Likewise he has not countered Defendant's legitimate reason for passing him over (that his résumé depicted a less qualified candidate than others). So while this Court acknowledges that it must be careful not to overstep its bounds in the summary judgment phase, it does not believe that *Medina* requires it to allow this suit to continue to trial simply because the Plaintiff makes a bare allegation of pretext.

Plaintiff cites *Reeves* to argue that some reasons articulated by an employer are "prone to resist summary judgment" and claims it is not appropriate for a district court to determine whether subjective criteria are bona fide or to make dispositive determinations about the employer's credibility. (Doc. 21 at 9). But again, the very case law Plaintiff cites requires more evidence than Plaintiff provides. *Reeves* requires both a *prima facie* case **and** "evidence that contradicts the employer's proferred justification." *Id*. at 8 (citing *Vaughn v. MetraHealth Co., Inc*., 145 F.3d 197, 201-02 (4th Cir. 1998). Here, Plaintiff has provided no evidence beyond his own subjective belief that his résumé was intentionally altered to contradict CBP's proferred justification for its decision. Subjective belief alone cannot raise a genuine issue of material fact precluding summary judgment. *Byers*, 209 F.3d at 427. Therefore this Court is well within its discretion in deciding that there are no fact issues which warrant a trial.

## IV.   Retaliation Claim

Plaintiff initially asserted that the Agency retaliated against him. (Doc. 1 at 4). Defendant pointed out that the retaliation claim was not viable because (1) it was not asserted during the administrative process,[10] and (2) the only adverse employment action which is complained of, Plaintiff's non-selection for the Field Canine Enforcement Trainer positions, occurred before Plaintiff filed any claim against his employer, so no retaliation could have occurred. (Doc. 18 at 25). Plaintiff never responds to these arguments or reasserts his retaliation claim. Accordingly, the Court considers this claim abandoned and grants summary judgment in favor of the Defendant on the retaliation issue.

---

[10] *See* Doc. 18 at Ex. A-1 p. 2.

### V. Conclusion

The Court hereby **GRANTS** Defendant's Motion for Summary Judgment. Any relief not herein expressly granted is denied. Any pending motions are denied as moot.

SO ORDERED this 30th day of January, 2009, at McAllen, Texas.

                                            _____
                                            Randy Crane
                                            United States District Judge